2022 IL App (2d) 210533-U
No. 2-21-0533
Order filed August 24, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(c)(2) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CM-1768 |
| AKIN AKINBOSOYE, | ) ) ) | Honorable Reginald C. Matthews, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Hudson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant failed to demonstrate that trial counsel was ineffective and his conviction for domestic battery is affirmed.

¶ 2    After a bench trial defendant, Akin Akinbosoye, was found guilty of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2020)) and sentenced to conditional discharge. He contends that he is entitled to a new trial due to ineffective assistance of trial counsel. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4    We recite only what is necessary to decide the appeal at hand. Prior to trial, 20 days before defendant was expected to testify, defense counsel, Jonathan Goldman, sent defendant an e-mail,

asking him when he would be available "next week" for a "zoom meeting." Goldman wanted to "go right thorough [his] exact list of questions [he] will be asking when [defendant] testif[ies]." The afternoon before defendant was expected to testify, defendant contacted Goldman, noting that he "[has] yet to hear from [him] on the walkthrough that [Goldman] indicated we needed to do." Goldman replied a little over an hour later that they could talk that night or meet before trial. Goldman stated that he would do "[w]hatever is easiest for [defendant]." The record does not reflect whether defendant and Goldman ever met.

¶ 5    At defendant's bench trial, Goldman asserted during opening statement that the court would "hear from the defendant." Goldman intimated that defendant would testify that he did not push his wife and that his wife was injured from gripping a vacuum cleaner and swinging it at defendant.

¶ 6    At trial, defendant's wife testified that she and defendant were going through a divorce but still living in the same home with their children and defendant's mother-in-law. On the evening of August 23, 2020, defendant and his wife got into an argument about whether their daughter should finish her homework or take out the trash. During that argument, defendant pushed his wife. This caused her embarrassment and shame. She then grabbed a vacuum cleaner, and her finger was injured when defendant pulled the vacuum out of her hand.

¶ 7    Before defendant rested, Goldman asked for time to speak with defendant about whether he wished to testify. After that discussion, Goldman, in defendant's presence, told the court he "[spoke] to [defendant] regarding whether he wishes to testify, and he has just assured me that he does not wish to testify." Defendant did not contradict Goldman.

¶ 8    The trial court then admonished defendant about his right to testify. During those admonishments, defendant assured the court that no one forced or threatened him not to testify; he

had "been able to make an assessment about [his] case and talk to [Goldman] about whether to testify or not;" and "based on [his] assessment, *** [he] wish[ed] at this time to waive [his] right to testify." Defendant never asserted during the proceedings that he was waiving his right to testify because Goldman failed to prepare him to testify.

¶ 9        The trial court found defendant guilty of one count of domestic battery. That count charged defendant with "knowingly" making "physical contact of an insulting or provoking nature with [his wife] *** in that *** defendant pushed [his wife] about the body."

¶ 10       On May 6, 2021, the trial court sentenced defendant to 12 months of conditional discharge. Defendant moved *pro se* for a new trial and filed a notice of appeal. The posttrial motion was stricken, as the notice of appeal divested the trial court of jurisdiction. Defendant moved this court to dismiss the appeal, and we granted that motion on June 7, 2021.

¶ 11       On June 15, 2021, John W. Radosevich entered his appearance for defendant. On June 22, 2021, the State agreed to grant defendant additional time to file an amended posttrial motion. Over two months later, on July 27, 2021, Radosevich filed an amended motion for a new trial, arguing, among other things, that Goldman was ineffective for failing to prepare defendant to testify. Radosevich alleged that (1) defendant waived his right to testify only because he had not prepared at all with Goldman and (2) had defendant testified, he would have denied that he ever pushed his wife.

¶ 12       At the hearing on the amended motion for a new trial, Goldman and defendant testified. Goldman testified that "[i]nitially, [defendant] had indicated that he was going to let [him] know when he was available to meet [to go over his testimony], and he did not." Defendant, who at times was argumentative, testified that he "would [have] liked[d] to testify, because [he] felt [he] had evidence that was supportive of [his] position in this case." However, Goldman never met with

defendant to discuss the questions Goldman would ask. Defendant admitted that he told the trial court he wanted to waive his right to testify, but he claimed he did so only because he felt he was not prepared. If he had testified, he would have given his account of the argument on the evening of August 23, 2020. According to defendant, his wife became angry. She was six inches from his face, screaming and spitting on him. The spitting bothered him. He asked his wife to back up, and when she refused, he "proceeded to move her back." Defendant explained that, with his hands held at chest level, he pushed both of his arms out 10 to 11 inches. Defendant then "grabbed [his wife] right by the arm and moved her back."

¶ 13     The trial court denied defendant's motion for a new trial. The court found that defendant, an "extremely intelligent man," would have told the court if he was waiving his right to testify because Goldman had failed to prepare him. The court noted that Goldman never heard back from defendant when he initially asked defendant about preparing his testimony, and when Goldman heard from defendant the night before the trial resumed, Goldman timely responded. The court observed that "[a]t some point, *** defendant must assist in his [own] defense." In addressing whether defendant was prejudiced by Goldman's alleged ineffectiveness, the court noted that defendant admitted to making contact with his wife. Finally, based on defendant's argumentative behavior during his testimony and his lack of decorum even as the court was delivering its ruling, the court said to defendant : "I don't think I would have found you credible [at trial]. I can tell you right now I didn't find you credible."

¶ 14     Defendant appealed within 30 days after the trial court denied his amended motion for a new trial. On appeal, this court ordered the parties to address our jurisdiction. The State moved to dismiss for lack of jurisdiction, and we granted that motion. Defendant moved our supreme court

to issue a supervisory order directing us to vacate our dismissal. The supreme court granted that motion and now, with our jurisdiction established, we turn to defendant's appeal.

¶ 15                                    II. ANALYSIS

¶ 16    Before this court, defendant contends that Goldman was ineffective. We agree with the State that defendant has failed to demonstrate that counsel was ineffective.

¶ 17    "To prevail on a claim of ineffective assistance of counsel, a defendant must show [(1)] that counsel's performance was objectively unreasonable under prevailing professional norms and [(2)] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." (Internal quotation marks omitted.) *People v. Knapp*, 2019 IL App (2d) 160162, ¶ 38. "A defendant alleging ineffective assistance of trial counsel must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence." (Internal quotation marks omitted.) *Id.* Because the trial court rejected defendant's ineffective-assistance claim after an evidentiary hearing, we apply "a bifurcated standard of review, wherein we defer to the trial court's findings of fact unless they are against the manifest weight of the evidence, but make a *de novo* assessment of the ultimate legal issue of whether counsel's actions support an ineffective assistance claim." *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008). "A finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident, or the determination is unreasonable, arbitrary, or not based on the evidence presented." (Emphasis omitted.) *People v. Corbett*, 2022 IL App (2d) 200025, ¶ 47.

¶ 18    Here, we cannot conclude that any of the trial court's findings were against the manifest weight of the evidence. Accordingly, we turn to considering *de novo* whether Goldman was ineffective.

¶ 19    Defendant claims that Goldman was ineffective because he failed to prepare defendant to testify at trial. According to defendant, Goldman's failure inhibited defendant from exercising his right to testify and providing support for the defense's theory that defendant's wife was the "aggressor," that she swung a vacuum cleaner at him, and that he did not push her in an insulting or provoking manner.

¶ 20    "A defendant in a criminal case has a constitutional right to testify in his own defense, but that right may be waived." *Knapp*, 2019 IL App (2d) 160162, ¶ 39. "In order to effectively waive his right to testify, a defendant is not required to execute a specific type of waiver, nor is the trial court required to ascertain whether a defendant's silence is the result of a knowing and voluntary waiver to testify." (Internal quotation marks omitted.) *Id.* "The decision whether to take the witness stand and testify belongs to the defendant, but it should be made with the advice of counsel." (Internal quotation marks omitted.) *Id.* "As a general rule, advice not to testify is a matter of trial strategy that does not amount to ineffective assistance of counsel unless counsel refused to allow the defendant to testify." *Id.*

¶ 21    Here, Goldman had a set of questions he was going to ask defendant if he testified. Defendant told Goldman that he was going to let Goldman know when he was available to meet to go over those questions. Defendant never set a date with Goldman. When defendant did contact Goldman, Godman made himself available to defendant to discuss those questions. Defendant never acted on Goldman's offer. Thereafter, Goldman spoke with defendant during the trial about whether he wished to testify. Defendant told Goldman he did not wish to testify. Goldman told the court in defendant's presence that defendant did not want to testify. Defendant then assured the court that, based on his own assessment of the case, he did not want to testify. Given all that transpired, " 'defendant's decision not to testify must be viewed as [trial] strategy with which he

agreed.' " *People v. Davis*, 378 Ill. App. 3d 1, 14 (2007) (quoting *People v. Smith*, 176 Ill. 2d 217, 235-36 (1997)).

¶ 22    That said, there is no reasonable probability that the result of the trial would have been different if defendant had testified. Putting aside the fact that the trial court probably would have found defendant incredible at trial, defendant admitted at the posttrial hearing that he pushed his wife, and his wife testified at trial that she felt embarrassed and ashamed. This is sufficient to establish that defendant "knowingly made physical contact of an insulting or provoking nature with [his wife] *** in that *** defendant pushed [his wife] about the body."

¶ 23    Defendant argues that because his wife denied spitting and swinging a vacuum at him, Goldman left his theory of defense unsupported when he failed to call defendant to testify. He claims that "[w]ithout [his] testimony at trial, there is no way to challenge [his wife's] denial that she spit at [defendant] and swung a vacuum cleaner at him." While that might be technically true, defendant loses sight of the fact that his testimony on these points would not have altered the result. Among other things, as noted above, defendant admitted pushing his wife, which is exactly what he was charged with. While he claims that his testimony would have supported his theory that his wife was the "aggressor," defendant never formally claimed self-defense.

¶ 24                                          III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 26    Affirmed.